Argument not to exceed 15 minutes per side Mr. Applegate you may proceed for the appellant when you're ready May it please the court, I'd like to reserve 5 minutes for rebuttal. The district judge abused his discretion in imposing an unreasonably low, effectively non-custodial sentence. The judge placed too little weight on the nature and circumstances of this bribery and obstruction offense, on the need for general deterrence in public corruption cases, and on the uncontroverted guidelines range. At the same time, the district judge placed too much weight on personal characteristics of the defendant that have little relevance in federal sentencing. The judgment should be reversed. First, the sentence does not embody a reasonable effort to account for the circumstances of the offense. Mr. Raphael was a long-time public official who accepted $144,000 in bribes to steer a multimillion-dollar contract to the bribe mayor. In exchange for those bribe payments, he took multiple official acts, including providing critical inside information that was central to the process of this food and beverage contract bid. When investigators questioned the defendant about his relationship with the company, he obstructed justice. He told multiple false statements to investigators and provided them with a falsified and fraudulently altered copy of the contract between himself and the bidder. I care a lot about neutral principles and the idea that the neutral principle here at stake is, after Booker, district courts have a fair amount of discretion, significant discretion, to part or vary from the guidelines, even. So I just ended in cases where I thought above-guidelines sentence of the district court, even though I would not have opposed that sentence, I didn't view it as an abuse of discretion under the significant discretion that they now have. And so I guess the way I think about these cases is, how would I have thought about this if you got, say, a 102-month sentence? So it's above-guideline sentence, which is kind of close to a one-day sentence. I mean, do you have thoughts on whether this is the right type of analogy? What I struggle here, just generally speaking, to be honest, is there's not a lot of standards for us to determine when a district judge abuses the judge's discretion. So I think you can comment on that. Your Honor, we don't resist the abuse of discretion standard here. The challenge the Supreme Court has given to district judges and to this court is balancing discretion for the district judge against avoiding unwarranted sentencing disparities against similar defendants. And one way to look at whether a judge has properly exercised his discretion is by looking at the explanation that the district judge gave. And here, the district judge simply did not justify this unreasonably low sentence. The focus was not on the relevant characteristics. The focus was on things of marginal sentencing relevance. So the court dwelled on, for example, support from the community and letters that the defendant had received, which is a relevant consideration to be sure, but one of marginal weight. In fact, community ties, family support are discouraged factors under the guidelines. The court brought up that the defendant's mother and brother had passed away, that the judge and the defendant had grown up in the same general area, and the judge knew the defendant and members of the family. That's what the bulk of the district judge's time was spent on. And then when we turn to the other 3553A factors, the district judge gave them the back of his hand. For example, in describing the crime here, the nature and circumstances of the offense, the district judge described the offense as boneheaded, suggesting it was more clumsy than calculated, and said that the obstruction of justice, which was not objected to, was, quote, more a perception thing. The judge paid some lip service to general deterrence, but did not—and said, for example, that general deterrence was the most important 3553A factor here, but did not explain how, if that's the most important 3553A factor, how effectively noncustodial sentence afforded general deterrence. So is the problem that there was an inadequate explanation? So we are not raising a procedural reasonableness argument that it's an inadequate explanation, but over and over in substantive reasonableness cases, this court has said that the district judge needs to justify large variances from the islands, whether those are upward or downward. The justification is simply not on the record. And it's hard even to hypothesize what the— Our case is distinguished between two types of justifications. One is just a generic policy disagreement with the guidelines, which I wrote a case for. I don't agree with the crack cocaine disparity. I'm going to depart from that. And the other is individualized reasons why you're varying from the guidelines. Would you—in some respects, I suppose, relying on the defendant's age as a discouraged factor, that could be seen as a disagreement policy of the guidelines. But would you describe this as a general disagreement case or as more of an individualized variance because the district court thought that the defendant was outside the mind around the defendant? We view it as an individualized case, Your Honor. The judge did not state any disagreement either with 2C1.1, the guideline he was applying, or to the criminal history category, or any other part of the guidelines. In fact, the district judge partly spoke about the guidelines at the beginning. The judge calculated the guidelines' range and then never mentioned the sentencing guidelines again, which is one reason we think this is a substantively unreasonable sentence, Your Honor. Do you think that it would be—suppose he said, I think white-collar crimes—so I just disagree with the general deterrence claim. I think white-collar crimes are already punished too much, so I'm going to vary for that reason. Would that come with a presumption of reasonableness? Do you think that that could be described as what was going on here because he gave such short shrift general deterrence? I think—two answers, Your Honor. One fact-specific and one broader legal point. Here, the district judge specifically said the opposite, which is that he thought general deterrence was the most important factor. So I don't perceive that to be what the district judge did here. When district judges disagree with the guidelines, they can do that, but it's not given a presumption of reasonableness. It's looked at closely by this court in cases like Bispline and others. If the judge had done that and had justified his disagreement with the guidelines, and why the sentence he imposed met the other 3553A factors, including, importantly, avoiding unwarranted sentencing disparities, it's certainly possible that a sentence could be upheld on those grounds. It's hard to see how this specific sentence could be upheld on those grounds, but certainly a downward variance may be justified, but that's simply not what the district judge did here. The judge would also, in that context, have to contend with the nature and circumstances of the offense, not just general deterrence as an abstract matter, but specifically why this sentence, which involved a quite large bribe payment and then obstruction afterwards, why a downward variance to this degree would be warranted under 3553A1. Your Honor brought up age of the defendant. Again, as Your Honor indicated, age is a discouraged factor. Physical condition is a discouraged factor. In any event, Mr. Rayfield's age and physical condition were not so severe as to preclude prison time categorically. There was no request for a downward departure on those grounds. A downward departure was not granted, and the record would suggest that that was right. The PSR reported, and this was not objected to, that Mr. Rayfield worked and made a substantial income before the charges. There's no evidence that he had any health complications from his prior imprisonment. The defendant represented that he was... Counsel, I mean, I agree there wasn't much of an explanation, but there was a lot of discussion of the offense. And I don't think it's your typical bribe case. I mean, there was a plea, etc., but it doesn't... It's not a typical bribe case. He... And the grabber was giving the confidential information that, I think, a lot of it probably ultimately was public. But, so... I mean, the facts were a little bit different. And the other fact was that this happened before he had served time for another event, so that you were dealing with a defendant who had committed the offense before experiencing prison. I believe both sides agreed that there was no chance of him reoffending, so that general deterrence became the one factor that was weighing in favor of a meaningful sentence. That's not your typical bribe case, I don't think. I see my time is up. May I respond? Please. Thank you. First, I would resist the idea that this was not a typical bribe case. It was an exchange of a substantial amount of money for official acts, here providing inside information. Your Honor mentioned that some of this may have been public. That's contrary to the record. In the statement of facts, and in the unobjected to PSR, I've said that the inside information that Mr. Rayfield provided to the bribe payer was confidential at the time that he provided it. That's what I said. Some of it may have later become public. Oh, I apologize. I misunderstood. At the time he provided it, it was confidential. Yes, that's true. And so, in that way, it was an entirely typical bribe case. The public official receives a thing of value, and he takes official acts in exchange for it, official acts which provided assistance to the bribe payer. Although I agree that specific deterrence was not a significant factor in sentencing, I would resist the idea that general deterrence was the only relevant 3553A factor. It may have been the only species of deterrence that mattered at sentencing, but the nature and circumstances of the offense, the unobjected to guidelines range of 41 to 51 months, the personal characteristics of the defendant, and others were also 3553A factors that were very much at play in sentencing. It wasn't simply general deterrence, and our argument here is not simply that the court gave unreasonably little weight to general deterrence. Okay. Thank you, counsel. Thank you. Thank you for your vote. Good morning, Your Honors. I'm Roger Sugarman on behalf of defendant-appellee John Grayfield. May it please the court, that just the court properly considered all of the 3553A factors, balanced them, and imposed a sentence here that was sufficient but not greater than necessary to comply with the purposes of sentencing. Judge Watson's exercise of this post-Booker sentencing discretion to deviate downward from the low end of the guidelines to arrive at this sentence should be affirmed by this court for many of the reasons that Your Honors expressed during questioning of government's counsel. The court's sentence reflects its reasoned discretion and is substantively reasonable. Contrary to the government's focus on simply two of the 3553A factors, the court did, in fact, as the record displays... The court said nothing about... The court said nothing about why, in spite of certain factors, it was appropriate. The court recognizes the problem of general deterrence, the problem of breach of trust, and then does it address why the sentence reflects that? Your Honors, if there is a weakness in the opinion, it is perhaps its brevity, as opposed to expounding upon all the various reasons for reaching the conclusions that it did in the sentence that it imposed. Your Honors know from Supreme Court cases, the University of the United States, for example, being foremost, whether the appropriateness of brevity or length, conciseness, or detail, when to write, what to say, depends upon the circumstances. I don't think the circumstances here, going from a 41-to-51-month guideline sentence down to one day, would be a little more than brevity with that issue. I completely agree with the idea that it can be brief, but it is a pretty significant variance down here. It is a significant variance. So, our cases post-Cook or Boucher suggest that the way we should think about this is if it's an individualized variance, you ask what is the mine run case, that's usually the guidelines, and then you look to why the district court would explain to you why this fell outside the mine run case. So, the average defendant is, again, the sentence would be most appropriate. And I wonder if you could just explain your view of why the district court thought that this was not a mine run case. I believe the court looked at all the various factors in the hour and 20 minutes spent in court that morning, Your Honor. The judge focused on the 3553A factors. He spent a considerable amount of time addressing the need to avoid unwarranted sentencing disparities at the sentencing record at page 209. He went through, for example, the 240 cases sentencing commission data with respect to bribery and corruption. He looked at those cases. In approximately 45% of those cases, prison was not imposed on the defendants as part of the sentence. So I think while it's not as direct as Your Honors may wish it to have been, Judge Watson thoroughly considered the deterrent factor in the sense of avoiding unwarranted sentencing disparities in looking at the specific deterrence with respect to this particular individualized defendant. I think he did not overlook the fact that as the Gall v. United States Supreme Court decision says, there is to be accorded substantial weight, which I don't believe the government gives in this case, to the substantial restriction of freedom involved in a term of supervised release, which the Supreme Court has recognized. So that's part of the general deterrence. The specific deterrence, of course, has already been addressed. But this defendant was sentenced to three years of supervised release with 18 months of location monitoring, home confinement at his location monitoring, $144,000 in forfeiture, a $28,251 sentence of restitution. So I think the composite, Your Honors, as opposed to the court detailing and necessarily going through each one of the factors in order, it is part and parcel of the transcript, though, and the time he spent before imposing sentence. So is it for us to say how it could or should have been written as opposed to looking at the discretion that the court exercised and considering the totality of the circumstances? He considered the totality of the 3553A factors, not simply the nature and circumstances of the offense. That is one of the factors to be balanced in the same sentence as subsection A1 as the personal characteristics of the defendant, which is to be given more weight. The guidelines are imprecise at best at that. But if you go through the need for the sentence imposed under 3553A2, I believe the court met all of those particular factors, all of those standards, and when viewed in the context of, as Your Honors noted, the discretion that is afforded the district court who looks at and has the experience in both sentencing and in this particular case, the experience of this particular defendant. It's the second time in which this defendant appeared before His Honor, and he made that clear in the context of this sentencing, and he had a grasp of both what had happened in this case and what had happened in the prior case. He took into account not the related case of the U.S. v. Myers, but he certainly had that as part of his litany of assessments in making this particular sentence. And then he looked at the national figures from the U.S. Sentencing Commission, which are quoted in the red. Is this somewhat any abstract? I mean, the usual way we think about unwarranted sentencing disparities is the expert commission is the one that sets the guidelines and the guidelines of the average sentence for this type of crime. So I would think that there is a pretty significant risk of a sentencing disparity here, given that the departure is so broad. Why should we look to those statistics rather than just the guidelines range itself? Well, I think the guidelines are advisory. The judge noted that. I think your honors know that. I'm preaching to the choir in that way. Why Judge Watson looked at this, I think he was trying to spend time in a very thoughtful and deliberate manner to see what else had happened with respect to defendants such as this one who were being sentenced for similar crimes. I think it goes above and beyond simply comparing this case to the related case of the United States v. Myers. So I think he went beyond what might be expected to try and look at a sentence that fit this particular individualized defendant. I think that's exactly what he did in this case. The appeal really asks to substitute their weighting mechanism or their judgment or their discretion. It asks you to take that from the district court. I agree with you. I start with a broad presumption. Well, not presumption. There's no presumption. It's outside. But they're entitled to great discretion even when district courts vary. But there has to be. Otherwise, we have no view. There has to be some limits. I guess one, what the limit is, it's hard to say. It's like the numbers of 10 months versus all the way down to one day or how far, when you look at all the factors. One data point that I thought was important to keep me constrained by the law was how other courts of appeals helped out with pretty significant downward variances of this nature, like from a guidelines range in the 30 to 60-month range down to one day. And I have to say, the vast majority of opinions that I have read have reversed these types of pretty significant downward variances. So that suggests to me, at least, that we should be looking at this sentence pretty closely. Would you concede that most decisions that you've reviewed have reversed? Or how would you address certain precedent in the analogous scenario? Certainly. I tried in the brief on the cases that were cited by the government, especially in the child pornography cases, which is where you get into the policy disagreements with the sentencing guidelines. I think that's where you see, in those cases where there was a significant downward variation, a variance downward, is where this court reversed the Blisseline case, the Robinson case, the Cana ceiling case. Those are cases in which the court did say that this policy disagreement, which formed the basis for the sentence in the district court, was inappropriate and was reversed. In the same set of circumstances, Judge, there's the DEMA case that's cited in the briefs that came out of this circuit as well, in which the court affirmed a one-day sentence of imprisonment. So I can't say that in the vast... I'll agree in the vast majority of the cases which relate to child pornography where the sentence reflects a significant disagreement by the district court judge leading to that downward variant, that the cases were reversed. I did not find them necessarily in this case. I found some additional cases after I saw this panel, and I know Judge Wyden has authored an opinion in which a one-day sentence was affirmed by this court. I believe it was PRISEL, P-R-I-S-E-L. And I looked at other cases in which Your Honor and Judge Batchelter were involved, and both results occur. So I will concede that it becomes more of a head-scratcher for Your Honors to look at a district court decision where you wish there was more from the district court judge in explaining the decision. I don't disagree with... What would be wrong with remanding for a resubstantiation and saying not necessarily that we're overturning the sentence but that it hasn't been justified with a record that has been presented to us? I hope Your Honors do not do that, obviously. I think there's sufficient need in the record that Your Honors can see the discretion of the court exercised and that I appreciate that you're not going to undertake a de novo review of that. But I think there is sufficient evidence and sufficient recounting by the district court judge that would allow an affirmance. I'm not so naive to not believe that that was something that Your Honor suggested that was a possibility. I think that much more so than a substantive unreasonableness and waiting. But, Your Honors, you know that Judge Watson is a very deliberate, thorough, thoughtful judge. He does not undertake his assignment lightly, and he gave great consideration and deliberation to the sentence. And I would think that on all the bases that he articulated in his opinion, albeit not as thorough as perhaps this court or others might wish, that it can be affirmed under the standards of Gaul, it can be affirmed under the standards that this court has adopted since Gaul and without having to remand for a further explanation of the reasons under 3553C. Counsel, I was curious about something. In the written agreement, there's a statement of facts, and included in that is the statement that very quickly after or very soon after the contract was awarded, your client sent a bill to his client for a success fee. And that, I think, was in the agreed-upon statement. Then, at sentencing, your client explains how he was never going to be able to vote and left the room, and that the individual, A, just let him know that they were just so pleased with all and he'd been able to help them out even before this, that they wanted to pay him this. So those are two really different narratives. Can you shed any light on that? I don't think I can add any more than what Mr. Rayfield said at sentencing. That's part of the government's obstruction, finding that in terms of a narrative that they believe is at odds with the statement in the plea agreement. Mr. Rayfield pled guilty. He did, in fact, send the invoice that Your Honor had mentioned. He did send it for the amount of the money that was in the contract, and there's no disputing that. Okay, so that is fact. That was a statement. It's fact. That he did send that contract. Correct. He did send the invoice for the successive charge. No disputing that. My time's up. I appreciate your attention. I'd like to address two points in the remaining time. The first is about brevity and the brevity of the court's explanation. Judge Murphy, you mentioned the case of Nancez v. Rene Boucher just a few years ago. In that case, this court repeatedly talked about the importance of an explanation in a substantive reasonableness challenge for multiple of the 3553 date factors in saying that the variance needs to be justified and explained in light of the nature and circumstances of that offense, in light of the need for general deterrence, in light of the need to avoid unwarranted sentencing disparities and the guidelines. There, the guidelines range was 21 to 27 months, and the sentence was 30 days, so the variance there was smaller than the variance here, and the explanation here is no better. The judge did not explain why an effectively noncustodial sentence was warranted in light of the nature and circumstances, the need for general deterrence, the need to avoid unwarranted sentencing disparities. Boucher is, in a long line of cases, really starting with Gall but going to Musgrave, which explained that the larger the variance, the better the explanation needs to be, and Musgrave also said that an explanation of how a noncustodial sentence affords general deterrence is particularly important, especially in light of the size of the variance there. Here, the brevity of the district judge's explanation is not just its weakness, it's its fatal, reversible weakness. It simply didn't put enough on the record to explain why the sentence here is justified under the 35-day period. Can I ask just briefly about the use of the Sentencing Commission statistics? Yes. I've seen that happen more often when there's an upper variance and defendants have been criticizing that the statistics is maybe over-inclusive, under-inclusive, it's very difficult to tell with abstract statistics along with individual opinion that this will fit. Do you have any comments on the use of the statistics here? Were they an appropriate benchmark apart from the guidelines range made, I think, about onboarding citizens? I'll answer both generally the use of statistics and specifically the use here. Generally, the use of the commission's sentencing statistics is appropriate and has been blessed by this court. The use here was not an appropriate use, and that's because really the court was looking at the wrong set of statistics. The court used statistics in 2C1.1 cases, so roughly speaking, bribery and extortion cases, and the court used statistics that grouped sentences under that guideline into imprisonment, probation only, and mixed sentences. But the statistics that the court used did not divide any more than use of that guideline. So whether that was a $1 bribe for a minor matter or a $1,000,000 bribe for a major matter, the statistics did not discern. The Sentencing Commission does have statistics that get into more granular detail. In fact, I believe in the Boucher case, the court cited specific statistics saying someone under the assault guideline with offense level 17 or whatever it was there, and criminal district category 1, this is the range of sentences that people received. That's a more appropriate use. Is there anything like that in the record here? Nothing like that in the record whatsoever. Is it conceivable, do you know, if we went to the Sentencing Commission's website and tried to figure it out? I mean, it's a difficult question to answer. I mean, most of the time that's the response when people don't like to use statistics is they say, well, these statistics are misleading for these reasons they're over-inclusive and under-inclusive. I've not really seen a case where they actually respond in the record. I don't know. I have not looked on the Sentencing Commission's website to see if the specific kinds of statistics that were cited in Boucher are available here. I would assume that they are, but I just don't know that for sure. It's not in the record. The parties were not briefing statistics in the sentencing memoranda, and so when the court brought it up, the parties were not in a position to respond, not knowing that that was going to be coming up. But the second point on that is—oh, I'm sorry, Your Honor. Is it fair to say, though, that I agree that if this— I wouldn't want to see any skimpier explanation on the part of the district court for why it came down to where it did on the sentence, but is it fair to say that you are at least as concerned here about the district court's focus on his own knowledge of this defendant and the fact that this defendant had already suffered a lot? I see that my time is up. May I respond? We are not pressing a procedural reasonableness challenge, which is to say we are not arguing that the court relied on improper considerations. That's not an argument we're pressing here. We are saying, however, that the personal characteristics, including things like the effectiveness prior sentence, ties to the community, and that sort of thing, are due only marginal mediating weight, and the court placed great weight on those characteristics. In fact, that was really the focus of the district judge's presentation. And so our argument is both that the court placed too little weight on important aggravating circumstances, but also too much weight on mitigating circumstances of marginal relevance. For these reasons, Your Honor, the judgment should be reversed. Thank you. Thank you. The case will be submitted. We thank you for your evidence today. Question and comment, please.